In the Matter of the Intermediate Accounting of BANKERS TRUST COMPANY et al., as Substituted Trustees and as Executors of AUGUST HORRMANN, Deceased Trustee, and the Accounting of MINNIE S. GUGGENHEIMER, as Executrix of CHARLES S. GUGGENHEIMER, Deceased Trustee, under Trust Made by AUGUST HORRMANN, as Settlor, Respondents. ETHEL M. WATSON et al., Appellants; ALFRED NORICK, as Guardian ad Litem for Unborn Issue and Others, Infants, Respondent.

First Department, December 18, 1956.

*Eli H. Bronstein* for Ethel M. Watson, appellant.

*Abraham Shamos* of counsel (*Louis Newman* with him on the brief; *Guggenheimer & Untermyer*, attorneys), for Bankers Trust Company and another, as substituted trustees and as executors of the estate of August Horrmann, deceased trustee, and Minnie S. Guggenheimer, as executrix of the estate of Charles S. Guggenheimer, deceased trustee, respondents.

*Milton Sanders,* as guardian ad litem for unborn issue and others, infants, appellant.

*Alfred Norick,* as guardian ad litem for unborn issue and others, infants, respondent.

*Per Curiam.* The question involved on this appeal is the proper division, as between principal and income of a trust, of 300 shares of stock representing a stock distribution by doubling the number of shares held by each stockholder. The question is to be determined by the construction of a provision of the trust instrument governing the treatment of dividends.

The relevant provision of the trust instrument reads as follows: " During the lifetime of the Settlor all dividends, whether payable in cash or in securities or other property, and whether ordinary or extraordinary, shall be considered and treated as income; after the death of the Settlor, to the extent permitted by law, all stock dividends and dividends paid or payable in securities or other property shall be considered and treated as principal and all cash dividends, whether ordinary or extraordinary, shall be considered and treated as income."

The facts as to the nature or character of the stock distribution here are quite clear. It is demonstrable that the 300 shares of stock involved represent a stock split-up or mere increase of shares to the extent of 200 shares and a stock dividend or capitalization of earnings to the extent of 100

shares. It is our conclusion, therefore, that 200 shares should be regarded as principal and 100 shares as income payable to the income beneficiary.

In our view the wording of the trust instrument and the indicated intention of the settlor do not warrant the contrary conclusion reached at Special Term that the settlor contemplated and directed that any and all additional stock issued and received in the trust should be treated as income regardless of the nature of the distribution. It would not be natural for a settlor to intend a *pro tanto* destruction of a trust whenever there was a stock split-up or mere multiplication of shares. Certainly such an intention should not be ascribed to a settlor unless language employed in the trust instrument compels or clearly indicates such an intention. We do not find words of such explicitness or implicitness in the instrument here.

While the settlor obviously intended a different treatment of stock dividends as between the period of his life and the period thereafter, still his language does not suggest that he intended to assimilate a stock split-up to a stock dividend. The word " dividend " is the touchstone and presumably he was thinking of distributions in the nature of dividends, whether by stock or otherwise, and making clear that any dividends in stock as well as in cash should be regarded as income during his lifetime. A mere stock increase or split-up which is a substitution of more shares for the number of shares outstanding is not a dividend in any ordinary or proper concept of the term. It is in no sense income but only an adjustment of capital. If the language of the trust agreement were to be interpreted as including such a stock distribution in the definition of income, we would have to say that what the settlor intended was to take down capital whenever the fortuitous event of a stock split-up occurred. If he had any such thing in mind, it could have been easily expressed. The trust instrument indicates no lack of language facility in providing for what was intended and we are unable to see that the language employed suggests an intention to treat capital as income whenever a company elects, for whatever reasons, to cast its capitalization into the form of a larger rather than a lesser number of shares.

The order appealed from should be modified to the extent of requiring the executors to return to the trustees 200 shares of the stock to be treated as principal in the trust.

BREITEL, J. (dissenting). I dissent and vote to affirm the order of Special Term.

Legalistics, not law, suggests modification of the order, and the construction that the stock-split declared by Standard Oil Co. of New Jersey, must, contrary to the wish of the settlor, be allocated largely to principal rather than income.

The governing paragraph of the trust indenture is far from clear. Its clumsy draftsmanship is evident on superficial examination. The first clause, in referring to " dividends " of every nature, allocates them to income during the life of the first life beneficiary, who was also the settlor and cotrustee. The second clause, however, in referring to dividends mentions " stock dividends " and allocates them to principal after the death of the first life beneficiary. But this specific reference is omitted from the first clause, although obviously intended to be included, and in fact included by reason of the generality of the language. Hence, on any view, the reference to "dividends " is hardly to " true dividends ", whatever that may mean.

Stock-splits, of course, are not referred to in either clause in express language, so the question that has arisen is left unanswered — unless the word " dividends " in this context be deemed to include it. The settlor, whose intent is to be divined, thought it was; and he expressed that understanding in the most unequivocal fashion, namely, by his action in treating the additional shares resulting from the stock-split as income. Lest one fear that this stemmed from ignorance of the legal mysteries, his lawyer and cotrustee, at the then peril of surcharge, concurred in his action.

Those learned in the law may see a monumental difference between a two for one stock-split and a 100% stock dividend, but to the investor or even to the corporate financier, there is no such marked difference. Either form of distribution is divided among the stockholders — and to that extent is a " dividend "—; and much more than a superficial classification of accounts is required to determine the economic effect. Where there is no specific guide the decisional precedents and the pertaining statutes resolve the problem nicely, because it must be resolved.

But here we require no forced resolutions. We have unclear and clumsy language, and the clearest expression of intent by the settlor while he yet lived, concurred in by his lawyer and cotrustee. To undo his action is destructive of intent and understanding, and makes a fetish of a paper that was ambiguous or silent in the first instance, on the question which arose. The result is not only destructive, but ludicrous, because

the settlor and his lawyer-cotrustee could so easily have accomplished the same result by writing some more words on paper, addressed to themselves. For the trust indenture reserved to the settlor unlimited power to revoke or modify, in whole or in part, the trust created by him and that power had indeed been exercised from time to time.

While Special Term made some rather sweeping remarks about corporate bookkeeping in referring to how "stockmelons" are divided, the result was quite correct, when applied to an instrument of the character here involved with: (1) unclear language, (2) unlimited power to modify or revoke and (3) settlor's unequivocal expression of intent and understanding by his action, concurred in by the lawyer-cotrustee. Thus the shares involved are now being rediverted from the settlor's estate and the beneficiaries under his will, to the trust and the beneficiaries therein mentioned, in contradiction of his wish and deed. This is, in truth, law losing contact with reality.

The order should be affirmed.

PECK, P. J., BOTEIN, RABIN and COX, JJ., concur in *Per Curiam* opinion; BREITEL, J., dissents and votes to affirm in opinion.

Order modified in accordance with the opinion herein and, as so modified, affirmed. Settle order on notice.